Superior Court of Cincinnati—Special Term.)

### CHARLOTTE K. WRIGHT. v. FREDERICK HEIDORN et al.

1. A covenant in a lease, which restricts the property leased to certain specified uses, is a covenant that runs with the land.
2. If the covenant is one that runs with the land, the word "assignee", is not necessary to make the covenant effective as to all persons to whom the property or lease passes.
3. A grantor may impose restrictions upon the use or enjoyment of land, providing such stipulations are not for an illegal purpose.
4. The acceptance of rent by a lessor, after a violation of such a covenant, does not estop him from asserting his right to prevent the continued violation of such covenant.
5. The continued violation of such a covenant constitutes a continuous cause of action, and may be enjoined in equity unless it appears that the plaintiff suffers no damage therefrom.

---

SMITH, J.

The evidence in this case shows that in 1838 Elnathan Kemper (who happens to be the father of plaintiff) donated a tract of land on Walnut Hills to the trustees of Lane Seminary, a divinity school. The seminary agreed to lay off the ground into streets and blocks and lots. Subsequently the trustees sold and leased many of the lots, retaining the ground in the central part for strictly school purposes.

The property in dispute was a part of the property donated by Kemper to the seminary, and was subsequently perpetually leased by the trustees of the seminary to one Samuel Startzman at a rental of $35.00 per annum. The trustees of the seminary subsequently conveyed the fee to the plaintiff, and the lease passed by different mesne conveyances to the defendants.

The first lease, viz., from the trustees of Lane Seminary to Startzman, contained the following covenant:

"And further, that the said demised premises, or any part thereof, or any building thereon, shall not, at any time hereafter, be used or occupied for manufacturing, keeping or vending ardent spirits, or for keeping a tavern or public house, or for a blacksmith shop, or for the manufacturing of soap or candles, or a livery stable, or for slaughtering animals, or for a butcher shop or stable, or a tin shop; and further, that said premises shall not be occupied for any other purpose than private dwelling houses without the consent of said trustees of Lane Seminary and this lease, however, is made on this condition, that if any installment of the rents hereby reserved shall remain unpaid for the space of six months after the same shall haev become due, or if any other of the covenants herein contained on the part of Samuel Startzman, his heirs executors, administrators or assigns, to be done and performed, shall be violated and not faithfully kept, then and in either case this lease and the term hereby created shall cease and determine and be utterly void, and the said trustees of the Lane Seminary, their successors or assigns, may thereupon forthwith re-enter upon the said demised premises, and hold the same as though this lease had never been executed, free and discharged of the same."

It further appears in evidence that the defendant has erected a building upon the lot leased, the upper part of which he is using as a dwelling house and the lower floor of which he is using as a horse-shoer or farrier, and that as such horse-shoer or farrier he not only shoes horses, but also makes the shoes for that purpose; that at the time of the erection of the building the defendants were notified by counsel for plaintiff, that such business, if carried on, would be in violation of the terms of the lease, and that plaintiff would not permit such violation.

The defndants make no substantial denial of the facts as above stated, but deny that the plaintiff is entitled to any relief, and base their contention upon the following grounds:

First. That the business of a horse-shoer is not that of a blacksmith, and that even if it is, only part of the premises are so used.

This argument is entirely without merit. The horse-shoer here is proven to manufacture his own shoes, and there can be no serious controversy but that he is a blacksmith. And as to the argument that only part of the building is thus used, it is sufficient answer to merely refer to the language of the lease which forbids the use of "the premises or any part thereof" for the specified purposes. See Cornish v. Wiessman, 43 Cent. Law Journal, 328.

Second. That the covenant forbidding the use complained of is not a covenant that runs with the land.

It is difficult to frame a definition of a covenant which runs with the land which would be an absolute test by which to determine the character of any covenant in question; but a covenant such as this is which relates to the use and enjoyment of the land not only at the time of the making of the lease, but for the future also, is without doubt a covenant that runs with the land. Indeed it has been held in New York that "a covenant made by a grantee that he will not carry on, or allow to be carried on, any offensive trade upon the premises," and "a covenant in a deed of city lots, providing that any house which should be built upon such lots would be placed back a specified distance from the line of the street on which such lots front," are covenants running with the land.

Third. That inasmuch as the lease recites that the use is only forbiddeen when it is without the consent of the trustees of Lane Seminary, and does not say "their successors and assigns,' that the right to take advantage of the covenant is merely personal to the trustees, and ceases the moment the title is alienated.

I shall not enter upon an examination of the language of the lease to determine whether taking the lease as a whole it is not a fair inference that the words successors and assigns used therein in other places are not intended also to be applicable to this covenant: because such an examinaton, in view of the law governing the use of such words in connection with a covenant which runs with the lands are unnecessary.

The better rule now seems to be that if the covenant runs with the land the word "assign," is unnecessary,. In the note to Spencer's case, 1 Smtih's Leading Cases, 208, it is said:

"It may be observed that the question of whether it is necessary to covenant for "assigns" as to anything not in esse at the time of the covenant, discussed in the first and second resolutions of the leading case, has generally been passed over lightly in this country, and the use of the word "assigns" considered of little importance if an intention that the covenant run can be gathered from the whole instrument."

In Masury v. Southworth et al.,9 Ohio St.,352, the Supreme Court in passing upon the question as to the necessity of the use of the word "assigns" in connection with a covenant which runs with the land, said:

"The important consideration is, whether the covenant is annexed

to the estate and runs with the land. If this be so, the rights and liabilities of those who take the estate and possess the land during the term flow from a privity of estate, and not from any assignment of right or contract. If the covenant can not, or does not run with the land, no words of assignment can create a privity of estate; if a privity of estate be created, no words of assignment are necessary."

Fourth. The covenant is in restraint of trade and against public policy, and will not be enforced.

In answer to this objection it seems to me sufficient to cite the case of Stines v. Dorman, 25 Ohio St., 583, where it is declared that—

"The law does not prohibit a grantor from imposing limitations or restrictions on the estate, nor does it require the grantee to take a greater interest than he purchases. If the effect of the stipulation is not to accomplish an illegal purpose it is lawful. And where it affects the land or the mode of its enjoyment, its effect is to bind all deriving title under the conveyance in which the restriction is found." * * * "It is claimed in argument that the restriction is void as being in restraint of trade. This claim can not avail. It is not a contract in general restraint of trade, but is limited in its application to a specific parcel of real property and forbids its use to a particular business."

See, also, Lang v. Werk, 2 Ohio St., 519.

Fifth. That the plaintiff has waived any violation of this covenant by accepting rent from the defendant.

It is to be observed that the language of the lease is that upon the violation of the covenant, limiting the use of the property, the lessee "may" re-enter; it does not say that he shall re-enter; and to give the covenant this construction would be to give the lessee the opportunity of avoiding this lease by simply violating the covenant, because immediately upon its violation the lessor would be compelled to re-enter, and such re-entry would avoid the lease. Surely such construction of the terms of this lease is untenable.

The true construction of the lease is, that while the violation of the covenants gives to the lessor the privilege of avoiding the lease, that he is not compelled to exercise this privilege, but may proceed to recover damages at law for its violation, or to enjoin in equity the continued violation, provided the violation is one to prevent which a court of equity will interfere, and he may also insist that the other covenants shall be observed.

Sixth. The last contention of the defendant is that a court of equity in such a case will not interfere by injunction.

This question is settled in this state adversely to the claim of the defendant in Stines v. Dorman, 25 Ohio St., 584, supra, where a deed contained a stipulation whereby the grantee agreed that the premises should not be used or occupied as a hotel so long as certain other property owned by the grantee should be used for that purpose. It was held that the stipulation bound both the grantee and those claiming under him, and could be enforced in equity by injunction. In disposing of the question, the court said:

"In regard to the claim that the plaintiff's remedy is by action for damages, it is sufficient to say that the remedy suggested is inadequate. The cause of action is continuous, and the nature of the damages such as not to be susceptible of proper assessment by a jury."

As showing that the Supreme Court of Ohio is sustained in this position by the courts of other states, I cite the recent case of Cornish v. Wiessman (New Jersey), 43 Cent. Law Journal, 328, 330, where it was provided in a deed that the premises should be used for "dwelling purposes only." In granting an injunction against the violation of this cov-

enant, the court, after the citation of authorities sustaining its position, said:

"The right to enforce building restrictions upon the use of property is now so clearly settled and so generally recognized, especially as to urban and suburban property, that the whole system of such restriction would be put in jeopardy if the right to enforce them depended upon the decision of the court in each case as to the amount of damage or injury. A purchaser deliberately and intentionally disregarding the restriction should make it clear, 'beyond possibility of doubt,' that the complainant can not be damaged. This has not been done here, and the defendant having proceeded at his peril with the erection, after notice of complainant's rights and her intention to enforce them, must bear the penalty. An injunction will be advised restraining the use of the premises of any part of the building thereon for the purpose of his market and from the use of the building, except for dwelling house purposes only."

In my opinion the plaintiff in this case is entitled to the relief prayed for, and it will be so ordered.

Adam Kramer and P. A. Reece, for plaintiff.

C. W. Baker, for defendants.